### FARMER *v.* EMIGRANT INDUSTRIAL SAV. BANK *et al.*

(*Supreme Court, General Term, First Department.*   May 23, 1890.)

APPEAL—REVIEW—WEIGHT OF EVIDENCE.

Where the only testimony for defendant is that of her husband, who is uncontradicted, a judgment for plaintiff will not be disturbed on appeal, as it was for the referee to judge of the credibility of the witness.

Appeal from judgment on report of referee.

Action by Ann Farmer, as administratrix of Henry Fitzsimmons, deceased, against the Emigrant Industrial Savings Bank and Annie E. Devlin. There was a judgment for plaintiff, and defendant Devlin appeals.

Argued before VAN BRUNT, P. J., and BARTLETT and BARRETT, JJ.

*Wm. H. Arnoux* and *Francis C. Devlin,* for appellant.   *Abram Kling,* for respondent.

VAN BRUNT, P. J.   This action was brought by the plaintiff, as administratrix of one Henry Fitzsimmons, deceased, of Pennsylvania, to recover from the defendant the Emigrant Industrial Savings Bank a balance standing to the credit of the deceased upon the books of the bank.   The bank having petitioned the court, the defendant Annie E. Devlin was brought in as a party defendant, and set up a claim for said moneys under a gift *causa mortis* from said deceased.   The issues in the action were referred to a referee, who reported that the defendant Devlin had not established a gift *causa mortis,* and gave judgment in favor of the plaintiff, and from the judgment thereupon entered the defendant Devlin has appealed.

The mere ground of the appeal is based upon alleged errors in the referee's findings of fact.   This point might be disposed of upon the ground that, as the case does not state, so far as we have been able to discover, that it contains all the evidence, questions of fact cannot be considered; but, as no such point is raised by the respondent, and questions of fact are discussed upon the briefs of both parties, we will consider these alleged errors upon their merits.

The only evidence tending to establish the alleged gift is that of the husband of the appellant, possibly somewhat supported by the witness Mary Duffy.   The story told by the appellant's husband was disbelieved by the referee; and, as he had the witness before him, and heard him testify, and could therefore best judge of his credibility from his demeanor upon the stand, his conclusion should not be interfered with unless we should have good reason to think that he erred.   It is claimed by the appellant that, no witness having contradicted the appellant's husband, the referee should have found the gift as established.   The story of the witness was that in 1874, when the alleged donor was sick with his last illness, he had a conversation with him in his (the witness') wife's presence; that he told him he was going to die, and told the appellant to bring him a parcel, and gave her the key to the trunk;

that she brought down the parcel, and handed it to the deceased, who took the parcel, and opened it, and took out the bank-books in question, and gave them to the appellant. She asked: "What am I to do with them?" He said: "You keep them. They are for you." "He said he thought he was going to die, and he wanted everything that was there to belong to her; and, in case he recovered, he knew that she would give them back to him." The witness further testified that the appellant and her husband (the witness) came back to New York, bringing the books with her, and that they have since been in the possession of herself or her attorney. On cross-examination the witness stated that he had had charge, to a certain extent, of his wife's financial affairs; that he had never talked over that matter with his wife, never talked over this case with her, never had spoken a dozen words to her about it; that he had never made a memorandum of the amounts shown in the books; and that he never spoke to anybody about these books until after Father Carew's (who was the administrator of the deceased in Pennsylvania) death, which took place in 1886. The appellant states that she brought the books in with her; that she had no conversation about them with her husband on the train; did not figure how much there was in the books on the train, or ever at any other time; from 1874 up to the year 1888 or 1889 had no conversation with her husband with regard to the books; that she never made any inquiries as to the amounts in the books; and that, in her business matters, her husband generally acted for her. Thus the appellant kept concealed her possession of these books for nearly 14 years, speaking to nobody about them, except her attorney,—not even to her husband,—from the time she received them. It is not at all remarkable that the referee refused to credit this remarkable story. In many of its features it is so palpably incredible that it would be indeed surprising if any intelligent mind could possibly give credence to it. There are many other features of the testimony of these witnesses which tend to discredit them, but which we cannot refer to here. Suffice it to say that a reading of the testimony shows that, unless the referee was bound to believe the statement of an interested party, which he clearly is not, there is no reason for disturbing his finding that a gift *causa mortis* was not established. The corroborating evidence, it may be so called, of Mary Duffy is of little value, as her statements upon her direct and cross examination show a material variance. Upon her direct, she says that when she gave the deceased a drink, on one occasion, he said: "I gave Annie the books; and, if I want them back, she will give them." Upon cross-examination the witness states the conversation as follows: "Annie has got the books; and she will do what is right with them, and she will give them back to me." Not the slightest suggestion of a gift, but merely a deposit for safe-keeping, can be inferred from this language, even if it be held to refer to the bank-books in question at all.

The whole case being so full of suspicious circumstances, we see no reason for disturbing the findings of the referee. Many exceptions to the exclusion of evidence are called to our attention, but most of them relate to the exclusion of declarations of persons deceased, or proof of transactions by the appellant with the deceased; and the rulings were proper. We have not by any means stated all the considerations which lead us to the conclusion to which we have arrived, but enough has been stated to justify such result. The judgment appealed from should be affirmed, with costs.

BARRETT, J. I concur. The referee, upon all the facts, was justified in declining to give that full credit to the claimant's husband which was essential to a finding of fact in favor of the gift. It seems to me most extraordinary that the party claiming these bank-books should, if she had faith in her case, have imperiled her rights by the long delay. She knew, as did her husband, that her success depended upon the latter's testimony, and that his

death would leave her substantially without hope. It is a grave thing to refuse credit to an uncontradicted witness, but the circumstances here are so peculiar and unusual that it was not without justification.

BARTLETT, J., concurs.